IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

NINGBO BONNY DECORATIVE                                                          PLAINTIFF
MATERIAL CO., LTD

V.                                                         CIVIL ACTION NO. 1:17-CV-114-SA-DAS

EAST SYSTEMS, INC., and
GEORGE K. EAST                                                                  DEFENDANTS

ORDER AND MEMORANDUM OPINION

Ningbo Bonny Wallcovering Co. Ltd[1], filed its Complaint [1] against East Systems, Inc. and George K. East in this Court on July 27, 2017, premising federal jurisdiction on the basis of diversity of citizenship. Ningbo Bonny is a Chinese limited corporation, and Defendants East Systems and George East are both Mississippi citizens. George East is the president of East Systems. The Defendants filed an Answer and Counterclaim [12] on October 13, 2017. Now before the Court is the Defendants' Motion for Partial Summary Judgment [57], requesting summary judgment in their favor on several of the Plaintiff's claims. Also before the Court is the Plaintiff's Motion for Summary Judgment [59], requesting summary judgment in its favor on all of the Defendants' counterclaims. The issues are fully briefed and ripe for review.

*Factual and Procedural Background*

The claims in this case arise from an agreement between Ningbo Bonny, and George East and East Systems to modify a large industrial machine. East is the president of East Systems, located in Columbus, Mississippi. Prior to his employment at East Systems, East worked for a company called Omnova Solutions. During his employment at Omnova, East was involved in the purchase of the Rotomec, a large commercial grade printer. Omnova Solutions later went out of

---

[1] Ningbo Bonny Decorative Material Co., Ltd. was later substituted as the Plaintiff. *See* Order [27].

business and held an auction in Columbus, Mississippi, in April 2013 at which it auctioned off various pieces of commercial printing equipment, including the Rotomec.

Prior to the auction, Ming Hu, Vice President of Ningbo Bonny, traveled to Columbus to survey the equipment to be auctioned. The day before the auction, Ming Hu and Shaobo Lou, another representative for Ningbo Bonny, traveled to Columbus and expressed their interest in purchasing the Rotomec. Although the machine was in general working condition, the Rotomec needed to be repaired and refurbished, shipped to China, and re-assembled for use in Ningbo Bonny's commercial wallpaper business.

The Rotomec is over 100 feet long and consists of two major parts: a mechanical unit and an electrical unit. Of particular interest here, the control unit, a sub-component of the electrical unit, was out of date and needed to be rebuilt. Individuals at the auction told Hu to contact East with any questions regarding the Rotomec because of East's experience with the operation and maintenance of the machine.

According to Ningbo Bonny, East represented that he could completely repair and restore the Rotomec, including the rebuilding of the control unit, in order to make it fully functional for Ningbo Bonny's purposes. According to Ningbo Bonny, it relied on East's assurances when it successfully bid on the Rotomec for $231,322.50. Ningbo Bonny contracted with Glenn Machine works to dissemble the mechanical parts of the Rotomec and ship them to China.

East traveled to China on June 19, 2013 to inspect the layout and mechanical parts for the Rotomec and to discuss various upgrades. After his visit, East emailed Ningbo Bonny a quote on July 9, 2013 that proposed three phases related to the rebuilding and handling of the Rotomec's control unit. Phase I consisted of removing, staging, and packaging the control unit of the Rotomec. Phase II consisted of building controls to upgrade and modify the Rotomec's electrical system.

Phase III involved sending the Rotomec back to China and training Ningbo Bonny employees on how to use the machine.[2]

East emailed Hu on November 4, 2013 and attached banking information and the first set of invoices requesting $164,130.85. Ningbo Bonny paid East Systems $164,130.85 on December 4, 2013. The payment included $51,180 for the completion of Phase I, $16,004.54 for cleaning the Rotomec in order for the machine to pass Chinese customs, and $96,949.31 for 35% of the Phase II Order. East emailed Hu on December 6, 2013 notifying Hu that he had received the payment and was moving ahead with the project.

The parties discussed four design proposals before deciding on the design that was to be used to complete the project. First, in late 2013, the Defendants planned to upgrade the Rotomec to convert it to Chinese power and then install the Rotomec in the form in which it otherwise existed when Plaintiff purchased the printer at the auction. In May 2014, East suggested separating the Rotomec into two different sections. This second proposal, however, would require Plaintiff to purchase an additional six-color printer that was part of the design.

East traveled to China in May and August of 2014 to discuss upgrades and modifications to the Rotomec. East made a third proposal on October 26, 2014 because he was unsure if Plaintiff could purchase the used six-color printer and knew that Plaintiff's print format would only use four colors. After making the third proposal, East sent Ningbo Bonny invoices that totaled $118,276.17. In November 2014, Ningbo Bonny representatives traveled to Columbus to discuss the proposals and the changes to the designs with East. According to Ningbo Bonny, during this visit East represented to Ningbo Bonny that not only could he rebuild the control unit, but he could also reassemble the mechanical parts of the Rotomec which Glenn Machine Works shipped to

---

[2] The parties stipulate that Phase I was completed. Phases II and III are at issue here.

China. Ningbo Bonny and East agreed that East would reassemble the mechanical and electrical parts of the Rotomec.

East emailed Hu on December 4, 2014 to inform him that East Systems would not be going forward with the design because the invoices from October 2014 had not yet been paid. Hu responded and asked for a revised invoice that reflected the additions and deletions from the design changes. East emailed the requested invoices in addition to an invoice for a fourth design proposal on December 9, 2014. East emailed Hu again on December 12, 2014 stating he had not yet received the requested payment and that as a result the work on Plaintiff's project would be delayed.

On January 6, 2015, Ningbo Bonny submitted payments to bring their account current. Work resumed, and East emailed Hu on July 16, 2015 stating he and an assistant would travel to China in August 2015 and would return every 6-8 weeks until the work was complete.

East traveled to China as planned from August 18-24, 2015. Ningbo Bonny shipped the sixth unit of the Rotomec to East Systems in Columbus to be upgraded and modified. East emailed Hu on August 27, 2015 indicating he would finish the work on the Rotomec. According to Ningbo Bonny, communications with East started to become difficult in the fall of 2015. Ningbo Bonny continually pressed East to complete the project as the Parties agreed. In any event, some work continued and there were some discussions around December 2015 between the Parties about a timeline for shipping some of the parts back to China.

East emailed Hu on July 12, 2016 and stated that he would be ready to ship the control unit back to China in December 2016. East emailed Hu again on October 4, 2016 indicating that they would make a big push to finish the machine in November/December. In this email, East also stated that he would need to purchase approximately $100,000 worth of parts one month before shipment. East asked Hu if he thought there would be a problem with payment. The Parties

acknowledge that this statement led to a miscommunication as Plaintiff interpreted the statement as a request for an additional $100,000, and Defendants contend that they intended the statement to be a request for assurances.

East and Hu spoke on the phone at which point East asserts Hu told him that Ningbo Bonny did not agree to an additional $100,000 and wanted to return to the design to which the Parties originally agreed.[3] At this point, communications totally fell apart. Hu emailed East on November 12, 2016 requesting an update on the progress and expressing his dissatisfaction with East's failure to communicate and failure to perform the work as the parties agreed. Hu continued to email East, but East stopped responding.

To date, Ningbo Bonny has paid the Defendants a total of $437,879.02, and asserts that Phases II and III have not yet been completed. The Defendants maintain possession of both the sixth unit and control unit of the Rotomec. Although the Plaintiff requested an update on the performance of the Parties' agreement, East failed to respond or contact Ningbo Bonny despite repeated efforts to communicate regarding the status of the project.

In its Complaint [1], Ningbo Bonny alleges claims against East in his personal capacity, and against East Systems, Inc. for breach of contract, tortious breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, promissory estoppel, misrepresentation, and an accounting. Now before the Court is the Defendants' Motion [57] seeking partial summary judgment as to all of Ningbo Bonny's claims against East in his individual capacity, and on its claims against East Systems for tortious breach of contract, and misrepresentation. In response, Ningbo Bonny filed a Motion [59] requesting summary judgment in its favor on all of the

---

[3] Plaintiff disputes this fact but for the purposes of its Motion for Summary Judgment as to Defendants' Counterclaims has assumed such facts are true.

Defendants' remaining counterclaims: breach of contract, breach of the duty of good faith and fair dealing, and *quantum meruit*.[4]

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). Mere "conclusory allegations, speculation, [or] unsubstantiated assertions are inadequate to satisfy the nonmovant's burden." *Pree v. Washington Cty. Bd. of Supervisors*, No. 4:16-CV-122-SA, 2018

---

[4] Pursuant to this Court's Order [28], the Defendants' counterclaim for malicious prosecution was dismissed without prejudice; Defendants' counterclaim for an accounting was dismissed with prejudice; and Defendants' counterclaim for tortious breach of contract was dismissed with prejudice.

WL 522776, at *6 (N.D. Miss. Jan. 23, 2018) (citing *Douglass v. United Servs. Auto. Ass'n*, 79 F. 3d 1415, 1429 (5th Cir. 1996)). Mississippi substantive law applies in this diversity case. *See Cox v. Wal-Mart Stores E., L.P.*, 755 F. 3d 231, 233 (5th Cir. 2014) (citing *Wood v. RIH Acquisitions MS II, LLC*, 556 F. 3d 274, 275 (5th Cir. 2009)).

*All Claims against East in His Individual Capacity*

First, Defendants request dismissal of all of Ningbo Bonny's claims against East in his individual capacity, arguing that Ningbo Bonny has no competent evidence to warrant the piercing of East Systems' corporate veil.

Under Mississippi law, parties may pierce the corporate veil to sue shareholders or corporate officers in their individual capacities when factual circumstances are clearly extraordinary. *Gray v. Edgewater Landing, Inc.*, 541 So. 2d 1044, 1046 (Miss. 1989). A moving party must show three elements in order to pierce the corporate veil: (1) a frustration of contractual expectations against the party from whom the moving party is seeking relief, (2) a defendant corporation and its officers' flagrant disregard for corporate formalities, and (3) the corporate shareholder's display of fraud or other equivalent misfeasance. *Id*. at 1047. *See also T.C.L. Inc. v. Lacoste*, 431 So. 2d 918, 922 (Miss. 1983); *Thames & Co. v. Eicher*, 373 So. 2d 1033, 1035 (Miss. 1979). A party must have credible evidence on each of these points in order to present a jury issue on a demand for piercing the corporate veil. *Gray*, 541 So. 2d at 1047. A corporate entity will not be disregarded in a case of simple negligence. *Id*. Rather, a party must show fraud in order to disregard the corporate entity. *Id*.

The Defendants argue that the Plaintiff's claims against East in his individual capacity are improper because the Plaintiff does not have sufficient evidence to pierce the corporate veil. The Defendants acknowledge that although the Plaintiff could presumably have enough evidence to

establish a jury issue on the first prong, frustration of contractual expectations, there is insufficient evidence to establish a jury issue on prongs two or three. In response, the Plaintiff argues that its claims against East for breach of the duty of good faith and fair dealing, tortious breach of contract, and misrepresentation are correctly asserted against East in his individual capacity for directly participating in conduct sufficiently flagrant to support an individual claim.

Ningbo Bonny cites *Hart v. Bayer Corporation* which states, "[T]he general rule is that the officer [or agent] to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct ... or the 'central figure' in the challenged corporate activity." *Hart v. Bayer Corp.* 199 F.3d 239, 247 (5th Cir. 2000) (citing *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cir. 1985) (quotations omitted)).

The only allegations that the Plaintiff uses to support the application of this statement of law are that East was the president of East Systems, he was the Plaintiff's only point of contact at East Systems for the agreement, that he made all representations to the Plaintiff, and decided to willfully and intentionally cease all communications with the Plaintiff.

The Plaintiff has not pointed to any evidence or case law from which a reasonable jury could infer that East's actions rose to the requisite level of "flagrant disregard for corporate formalities" or fraud. *Gray*, 541 So. 2d at 1047. Instead, the Plaintiff's allegations sound more in terms of general breach.

For these reasons, the Court finds that the Plaintiff failed to offer any evidence to establish a jury issue as to whether East and East Systems disregarded corporate formalities or any evidence that East committed fraud. Plaintiff's failure to provide competent summary judgment evidence on this issue establishes that there is no genuine issue of material fact on piercing the corporate

veil in this instance. Summary judgment on this issue is granted in East's favor, and all of the Plaintiff's claims against East in his individual capacity are dismissed with prejudice.

*Breach of Contract*

In Mississippi, in order to establish a breach of contract claim, the moving party must show (1) that there is a valid and binding contract and (2) that the non-moving party has breached or broken the contract. *Business Communications Inc. v. Banks*, 90 So. 3d 1221, 1224-25 (Miss. 2012). "When performance under a contract is due, any non-performance is a breach." Restatement (Second) of Contracts § 235(2). "Failure by the promisor to perform at the time indicated for performance in the contract establishes an immediate breach." *Fairchild v. Bilbo*, 166 So. 3d 601, 607 (Miss. Ct. App. 2015) (quoting *Franconia Associates v. United States*, 536 U.S. 129, 142-43, 122 S. Ct. 1993, 153 L. Ed. 2d 132 (2002)).

The Court is presented here with cross claims for breach of contract. The Plaintiff brought a breach of contract claim in its Complaint [1], and the Defendants asserted the same in their Counterclaim [12]. Although the Plaintiff now requests summary judgment as to the Defendants' counterclaim, the Defendants did not move for summary judgment on the Plaintiff's breach claim and concede questions of fact in their Response [65, FN 6]. As such, the Plaintiff's breach of contract claim will proceed to trial, and the Court will review only the Plaintiff's request for summary judgment on the Defendants' counterclaim here.

It is undisputed that the first prong for a breach of contract claim is satisfied as the Parties agree that there was a contract. As to the second prong, the Defendants argue that the Plaintiff breached the contract by failing to timely remit payment and for failing to remit payment for work which East Systems performed. The Defendants also argue Plaintiff repudiated the contract by failing to provide adequate assurances to the October 4, 2016 email regarding the $100,000.00.

9

For anticipatory repudiation to be applicable in a breach of contract action, the general rule is that the non-moving party must have made a positive and unconditional refusal to perform. *Old Ladies Home Ass'n v. Hall*, 52 So. 2d 650, 654-55 (Miss. 1951) (citing Williston and Thompson, Contracts, (Rev. Ed. 1937), § 1324). The Parties agree that there was a miscommunication as to the Defendants' meaning of the email. The Plaintiff read the email to be a request for an additional $100,000, but according to the Defendants, they merely intended the email to be a request for assurance of payment. The Plaintiff argues that even if the Defendants intended to merely request assurances, such a request was unnecessary as the Plaintiff was current on all payments at that time. This communication presents several issues of material fact, and the weighing of credibility, essential for deciding whether the Plaintiff understood the Defendants' intention for the email and if so, whether the Plaintiff positively and unconditionally refused to perform. When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150, 120 S. Ct. 2097.

In so holding, the Court also notes that the Plaintiff rebuts the Defendants' breach argument by countering that the Defendants breached the contract by making continual representations that the contract would be completed, failing to produce a completed project four years after entering into the contract, and ultimately ceasing their communications with the Plaintiff. The record also reflects that the Defendants accepted $437,879.02 from the Plaintiff, did not complete the project, and maintain possession of several essential parts of the machine.[5] The Plaintiff explains its desire to revert to the original design as an attempt to rescue the project when it informed the Defendants of a pressing customs deadline by which it would need the Rotomec to be shipped back to China. The Defendants, however, ceased communications with the Plaintiff and maintained possession of

---

[5] Of course, the Defendants counter-argue that their performance was frustrated by Ningbo Bonny's refusal to provide assurances, which the Court finds above involves genuine disputes of material facts.

the machinery. The reasons underlying this failure to deliver the machine to the Plaintiff and the miscommunication between the parties regarding the October 4, 2016 email present significant factual disputes on this issue.[6] As such, summary judgment on the Defendants' counterclaim for breach of contract is denied.

*Tortious Breach of Contract*

In addition to its general breach of contract claim, Ningbo Bonny has also asserted a claim for tortious breach of contract. The Mississippi Supreme Court has held that "[i]n order to constitute a tortious breach of contract alleged by a plaintiff, 'some intentional wrong, insult, abuse, or negligence so gross as to constitute an independent tort must exist.'" *Springer v. Ausbern Construction Co., Inc.*, 231 So. 3d 980, 988 (Miss. 2017) (citing *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 66 (Miss. 2004)). To prove tortious breach, the moving party must also show they are entitled to punitive damages as the general rule for punitive damages and tortious breach is the same. *Unity Communications, Inc. v. AT&T Mobility, LLC*, 643 F. Supp. 2d 829, 839 (S.D. Miss. 2009) (citing *Paracelsus Health Care Corp. v. Willard*, 754 So. 2d 437, 447 (Miss. 1999)) ("Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort.")

Punitive damages are only awarded in extreme cases and should be awarded with caution and within narrow limits. *Unity Communications*, 643 F. Supp. 2d at 839 (citing *Gardner v. Jones*, 464 So. 2d 1144, 1148 (Miss. 1985); *Life and Casualty Insurance Co. of Tennessee v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988)). When considering punitive damages, the court must look at the totality of the circumstances from the record to determine if a reasonable trier of fact could

---

[6] These same questions of fact, and when any breach actually occurred underly the Parties' arguments regarding any potential application of the statute of limitations.

11

find that the non-moving party has acted with reckless disregard/gross negligence or malice so as to justify an award for punitive damages. *Unity Communications*, 643 F. Supp. 2d at 839.

Without sufficient evidence, courts will not elevate a party's breach claim to a tortious breach claim. *Unity Communications*, 643 F. Supp. 2d at 839 ("There is simply no evidence in the record which creates a genuine dispute that ATTM acted with malice, gross negligence or reckless disregard toward Unity. The tortious breach claim thus fails.") A party must present evidence that clearly indicates an intentional act that would constitute an independent tort. *See Eselin-Bullock & Associates Ins. Agency, Inc. v. National General Ins. Co.*, 604 So. 2d 236, 241 (Miss. 1992).

As discussed above, questions of fact remain as to whether one or both parties breached the contract; however, the Plaintiff argues that East Systems tortiously breached the contract by accepting money yet intentionally, willfully, and recklessly failing to repair or complete the project as agreed and ceasing all communications with the Plaintiff while maintaining possession of critical machine components. Likewise, the Plaintiff asserts that it is entitled to punitive damages and attorney's fees as a result of its tortious breach of contract claim.

Although the Plaintiff uses the terms "intentional, willful, and reckless" when describing how East Systems breached the contract, the Plaintiff fails to articulate any facts that support and elevate these allegations to the level of an independent tort. In other words, the facts alleged sound only in terms of general breach of contract. Without any evidence from which a reasonable jury could infer that East Systems' actions could potentially constitute an independent tort, summary judgment as to the Plaintiff's tortious breach of contract claim is granted and the Plaintiff's request for punitive damages and attorney's fees is denied as moot.

*Misrepresentation*

Ningbo Bonny has also asserted a claim for misrepresentation. In Mississippi, in order to establish a negligent misrepresentation claim, a plaintiff must prove five elements: "(1) a misrepresentation or omission of a fact; (2) that the misrepresentation or omission is material or significant; (3) that the person/entity charged with the negligence failed to exercise that degree of diligence and expertise the public is entitled to expect of such persons/entities; (4) that the plaintiff reasonably relied upon the misrepresentation or omission; and (5) that the plaintiff suffered damages as a direct and proximate result of such reasonable reliance." *Horace Mann Life Ins. Co. v. Nunaley*, 960 So. 2d 455, 461 (Miss. 2007) (citing *Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d 1120, 1124 (Miss. 2002)).[7]

In making a claim for negligent representation, the first prong must concern a misrepresentation or omission of a past or present fact. *Bank of Shaw v. Posey*, 573 So. 2d 1355, 1360 (Miss. 1990). As a matter of law, a promise of future conduct is not sufficient to satisfy the first element for proving negligent misrepresentation. *Id*. Rather, the first prong requires a promise to be made with a present intention not to perform. *Id*. (citing *McMullan v. Geosouthern Energy Corp.*, 556 So. 2d 1033, 1037 (Miss. 1990); quoting *Credit Industrial Co. v. Adams County Lumber & Supply Co*, 60 So. 2d 790, 794 (Miss. 1952); quoting *McArthur v. Fillingame*, 186 So. 828, 829 (Miss. 1939)).[8]

---

[7] The Defendant separately analyzes the Plaintiff's misrepresentation claims under the elements of intentional misrepresentation. The elements for intentional misrepresentation are similar to those for negligent misrepresentation with a few additional elements. "To make a claim for intentional misrepresentation, [a plaintiff] must establish, by clear and convincing evidence: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the hearer and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury." *Kinney v. Catholic Diocese of Biloxi, Inc.*, 142 So. 3d 307, 418 (Miss. 2014) (citing *Schmidt v. Catholic Diocese of Biloxi*, 18 So. 3d 814 (Miss. 2009)) (additional citations omitted). While the Plaintiff has not distinguished the Defendant's actions between those they believe to be negligent and intentional misrepresentations, the elements of the two claims are so close in nature as to be considered in one analysis.

[8] Likewise, intentional misrepresentation claims may not be based on promises for future action. *Spragins v. Sunburst Bank*, 605 So. 2d 777 (Miss. 1992).

In its Complaint [1], the Plaintiff claims East misrepresented to the Plaintiff that he had the wherewithal and experience to repair the Rotomec and that he intended to timely repair the Rotomec. The Plaintiff has paid East Systems over $437,879.02, but the updates on the equipment have not been completed. The Defendants now seek summary judgment arguing that the Plaintiff's claim that East, on behalf of East Systems, misrepresented that it would finish the project in a timely manner is based on a promise of future conduct and should be dismissed as a matter of law. Further, East Systems argues that the Plaintiff has offered no evidence to prove that East Systems or East did not have the wherewithal or experience necessary to repair the Rotomec.

The Plaintiff argues that its claims are not based on future promises or East's qualifications but rather on East Systems' inaction on its promises. For example, the Plaintiff refers to a statement from East in 2015 in which he stated that he would devote all the extra shop time to the work to be done on the Rotomec. The result, however, was that East ultimately placed the Plaintiff's project behind those of East Systems' other clients because the Plaintiff had previously been delayed in making payments.

Courts have regularly held that future promises do not satisfy the requirements for negligent misrepresentation. *See Pennell v. Wells Fargo Bank, N.A.*, 2012 WL 2873882 at *11 (S.D. Miss. 2012) (A promise to rescind a foreclosure and modify a loan was a future promise that could not be considered as a negligent misrepresentation.); *see also Bank of Shaw v. Posey*, 573 So. 2d 1355, 1359-1360 (Miss. 1990) (Oral promises to lend capital to open a store, make a small business loan, and renew existing loans were all future promises that did not meet the requirements for negligent misrepresentation.); *Holland v. Peoples Bank & Trust Co.*, 3 So. 3d 94, 99 (Miss. 2008) (An oral promise to extend a line of credit for a bank's customer that was later denied the extension was dismissed as a future promise.); *Skrmetta v. Bayview Yacht Club, Inc.*, 806 So. 2d

1120, 1124-1125 (Miss. 2002) (A promise that one party had money ready to purchase a hotel, inducing the other party to join in a partnership agreement, was a future promise and could not be considered negligent misrepresentation.).

Similarly, the Plaintiff's claim here focuses on future promises. Specifically, the Plaintiff references East's statements that he would devote all of East Systems' extra shop time to the project and that he would do his best to get back on track with the project. Both of these statements indicate future intentions. The Plaintiff failed to allege, or to point to any facts to indicate, that East Systems knew when it made its representations that it would not be able to finish the upgrades on the Rotomec in a timely manner. East Systems' comments clearly indicate promises for future behavior. Summary judgment as to the Plaintiff's misrepresentation claim is granted.

*Breach of the Duty of Good Faith and Fair Dealing*

As noted above, both the Plaintiff and the Defendants have asserted claims for breach of the duty of good faith and fair dealing. The Mississippi Supreme Court has held that every contract has an implied duty of good faith and fair dealing. *Cenac v. Murray*, 609 So. 2d 1257, 1272 (Miss. 1992) (citing *Morris v. Macione*, 546 So. 2d 969, 971 (Miss. 1989)) (additional citations omitted). "Good faith is the faithfulness of an agreed purpose between two parties, a purpose which is consistent with justified expectations of the other party. The breach of good faith is bad faith characterized by some conduct which violates standards of decency, fairness or reasonableness." *Cenac*, 609 So. 2d at 1272 (citing Restatement (Second) of Contracts, § 205, 100 (1979)).

Although the Court is presented with cross-claims for breach of the duty of good faith and fair dealing in this case, only the Plaintiff requested summary judgment as to East Systems' counterclaim. East Systems did not move for summary judgment on the Plaintiff's claim.

East Systems argues that the Plaintiff's repeated design changes and lack of adequate compensation constitute a breach of the duty of good faith and fair dealing. In response, the Plaintiff asserts that the Parties agreed to the design changes and that the Plaintiff was current on all payments when the Parties' business relationship deteriorated. East Systems states it became frustrated with the Plaintiff's design changes and that it made its frustrations known, but fails to point to any competent summary judgment evidence to support this assertion. Based on the record presented here, East expressed his agreement with the first four proposals and his willingness to make the changes accordingly and in some instances suggested the design changes himself. Finally, the Plaintiff points to its communications with East, and asserts that it only made the final suggestion to return to the original design in order to meet a pressing customs deadline in China, again, a situation the Plaintiff contends East created through delay.

The Parties stipulate to the fact that there were multiple design changes. The only dispute here is whether the repeated changes "violate standards of decency, fairness or reasonableness." *Cenac* 609 So. 2d at 1272. Ningbo Bonny has brought forth at least some evidence from which a reasonable jury could infer that East contributed to, and in some cases suggested, the design changes and that the Plaintiff paid East Systems for the costs related to the changes. In contrast, East Systems has failed to bring forth any evidence regarding any potential that the changes were made in bad faith. As a result, summary judgment as to the Defendant's counterclaim for breach of the duty of good faith and fair dealing is granted.

*Quantum Meruit*

Finally, Ningbo Bonny requests summary judgement on the Defendants' counterclaim based on *quantum meruit*. The Mississippi Supreme Court has held that *quantum meruit* may be available as a remedy in either express or implied contracts. *In re Estate of Fitzner*, 881 So. 2d

164, 173 (Miss. 2003); *Estate of Johnson v. Adkins*, 513 So. 2d 922, 926 (Miss. 1987); *Estate of Van Ryan v. McMurtray*, 505 So. 2d 1015 (Miss. 1987); *Wiltz v. Huff*, 264 So. 2d 808, 810-811 (Miss. 1972). The following four elements must be met to successfully prove that relief should be granted under a *quantum meruit* claim: "(1) valuable services were rendered for materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; and (4) under such circumstances as reasonably notified person sought to be charged that plaintiff, in performing such services, was expected to be paid by person sought to be charged." *Id.* at 173-174 (citing *Redd v. Weathers Refrigeration & Air Conditioning Inc.*, 759 So. 2d 521, 525 (Miss. Ct. App. 2000) (quoting *Black's Law Dictionary* 1243 (6th ed. 1990)).

East Systems argues that it is entitled to recovery under *quantum meruit* for the value of the services and materials it rendered for the Plaintiff as a result of the many design changes made. The relevant case law clearly indicates that *quantum meruit* is applicable when there is no legal contract between the parties and the non-moving party is in possession of property or money which, in good conscience, belongs to the other party. *Ace Pipe Cleaning, Inc. v. Hemphill Construction Co., Inc.*, 134 So. 3d 799, 806 (Miss. Ct. App. 2014) (quoting *In re Estate of Fitzner* at 174 (internal citations omitted)). It is undisputed that a legal contract existed between the parties. Under the facts as alleged by both Parties in this case, and the Parties' agreement that a contract exists in this case, *quantum meruit* is inapplicable. Summary judgment on this issue is granted.

*Conclusion*

For all of the reasons fully discussed above, the court finds as follows:

The Defendant's Motion for Partial Summary Judgment [57] regarding all claims against East in his individual capacity and the Plaintiff's tortious breach of contract and misrepresentation

claims is GRANTED. All of the Plaintiff's claims against George East in his individual capacity are DISMISSED with prejudice, and George East is DISMISSED from this action.[9] Ningbo Bonny's claims for tortious breach of contract, and misrepresentation are DISMISSED with prejudice. All of Ningbo Bonny's remaining claims against East Systems: breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, promissory estoppel, and an accounting will PROCEED TO TRIAL.

The Plaintiff's Motion for Summary Judgment [59] as to the Defendant's remaining counterclaims is GRANTED in part and DENIED in part. Summary judgment as to the Defendant's counterclaim for breach of contract is DENIED. Summary judgment as to the Defendant's counterclaim for breach of the duty of good faith and fair dealing is GRANTED, and this claim is DISMISSED with prejudice. Summary judgment as to the Defendant's counterclaim for *quantum meruit* is granted, and this claim is also DISMISSED with prejudice. The Defendants' counterclaim against Ningbo Bonny for breach of contract will PROCEED TO TRIAL.

It is SO ORDERED on this, 1st day of October, 2019.

    /s/  Sharion Aycock              
        UNITED STATES DISTRICT JUDGE

---

[9] George East's only counterclaim, for malicious prosecution, was dismissed by separate Order [28] of this Court. With no remaining claims pending against him, or any asserted counterclaims remaining, George East is dismissed from this case.