**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**ABERDEEN DIVISION**

**NINGBO BONNY DECORATIVE**  **PLAINTIFF**
**MATERIAL CO., LTD**

**V.**  **NO. 1:17-CV-114-DMB-DAS**

**EAST SYSTEMS, INC., and**
**GEORGE K. EAST, individually**  **DEFENDANTS**

**ORDER**

This intellectual property case is before the Court on Ningbo Bonny Decorative Material Co., Ltd.'s "Motion to Exclude Defendants' Experts." Doc. #61.

**I**
**Procedural History**

On July 27, 2017, Ningbo Bonny Decorative Material Co., Ltd.,[1] filed a complaint against East Systems, Inc. ("ESI") and George K. East. Doc. #1. The complaint asserts claims for breach of contract, tortious breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, promissory estoppel, misrepresentation, and "accounting" stemming from the defendants' alleged breach of a contract to upgrade, ship, and setup a Rotomec commercial grade printer at the plaintiff's facility in Cixi, China. The defendants answered the complaint and asserted counterclaims for breach of contract, breach of the duty of good faith and fair dealing, quantum meruit, "accounting," tortious breach of contract, and malicious prosecution. Doc. #12.

On Ningbo's motion, United States District Judge Sharion Aycock, then the presiding judge in this case,[2] dismissed the counterclaims for malicious prosecution, accounting, and

---

[1] The complaint was filed on behalf of "Ningbo Bonny Wallcovering Co., Ltd. f/k/a Ningbo Bonny Decorative Materials, Ltd." *See* Doc. #1. However, on April 6, 2018, the parties filed a joint motion to substitute "Ningbo Bonny Decorative Material Co., Ltd." as "the properly named party …." Doc. #26. United States Magistrate Judge David A. Sanders granted the joint motion on April 9, 2018. Doc. #27.

[2] Judge Aycock recused herself from this case on December 6, 2019. Doc. #82. The case was then reassigned to the undersigned.

tortious breach of contract. Doc. #28. On cross motions for summary judgment, Judge Aycock granted summary judgment and dismissed with prejudice (1) all Ningbo's claims against George; (2) Ningbo's claims for tortious breach of contract and misrepresentation against ESI; and (3) the defendants' counterclaims for breach of the duty of good faith and fair dealing and for quantum meruit. Doc. #76 at 17–18.

On May 31, 2019, Ningbo filed a motion to exclude certain expert opinions of George and Judy East. Doc. #61. The motion is fully briefed. Docs. #67, #74.

## II
## Standard of Review

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

A "district court has wide latitude when navigating the expert-qualification process." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 625 (5th Cir. 2018). "As long as there are sufficient indicia that an individual will provide a reliable opinion on a subject, a district court may qualify that individual as an expert." *Id.* (quotation marks omitted).

"[E]xpert testimony must be relevant, not simply in the sense that all testimony must be relevant, … but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 529 (5th Cir. 2015) (quoting *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003)).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), a district court

has a "special obligation … to ensure that any and all scientific testimony is not only relevant, but reliable." *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 802 (5th Cir. 2018) (internal alterations and quotation marks omitted). "To establish reliability under *Daubert*, an expert bears the burden of furnishing some objective, independent validation of his methodology." *Brown v. Ill. Cent. R.R. Co.*, 705 F.3d 531, 536 (5th Cir. 2013) (internal alterations and quotation marks omitted).

When considering reliability, *Daubert* provides that trial courts should consider (1) "the extent to which a given technique can be tested;" (2) "whether the technique is subject to peer review and publication;" (3) "any known potential rate of error, the existence and maintenance of standards governing operation of the technique;" and (4) "whether the method has been generally accepted in the relevant scientific community." *Hathaway v. Bazany*, 507 F.3d 312, 318 (5th Cir. 2007). The *Daubert* factors "are not mandatory or exclusive." *Id*. Rather, the district court should consider whether the enumerated factors "are appropriate, use them as a starting point, and then ascertain if other factors should be considered." *Id*. (citing *Black v. Food Lion, Inc.*, 171 F.3d 308, 311–12 (5th Cir. 1999)).

In addition to the specific factors enumerated in *Daubert*, the Advisory Committee's Note to the 2000 Amendment to Rule 702 states that the following five "factors remain relevant to the determination of the reliability of expert testimony:"

> (1) Whether experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying.
> (2) Whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion.
> (3) Whether the expert has adequately accounted for obvious alternative explanations.
> (4) Whether the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting.
> (5) Whether the field of expertise claimed by the expert is known to reach reliable results for the type of opinion the expert would give.

Fed. R. Evid. 702 advisory committee's note to 2000 amendment (quotation marks and citations omitted).

Overall, the Court must be mindful that "the fact that … testimony may be assailable does not mean it is inadmissible under Rule 702. The trial court's role as gatekeeper … is not intended to serve as a replacement for the adversary system." *United States v. Ebron*, 683 F.3d 105, 139 (5th Cir. 2012).

### III
### Analysis

Ningbo's motion challenges certain expert[3] opinions offered by George and his wife, Judy East.

#### A. George East

George, the president of ESI, submitted an expert report which briefly sets forth the alleged factual history of his dealings, through ESI, with Ningbo. *See* Doc. #61-1. The opinions are (1) a PE9 component was a better purchase for the Printer than a PE1 component; (2) a "Printer/Laminator 5+1" was better than the Printer's original printer/embosser; (3) Rotomec would have been a superior choice to build the pieces for the Printer/Laminator 5+1 upgrade than the company Ningbo chose, and that Ningbo made its selection to save money; (4) Ningbo "got a very good buy" in its purchase of the PE1 and that the cost of a new "Printer/Laminator with dual unwinds and rewind … is $7M for the machine and $5M for support equipment installation cost;" (5) "not choosing Rotomec as partner to modify PE1 into a printer/laminator 5+1 was a mistake;" (6) the company chosen by Ningbo to perform the work "was a mistake;" and (7) the project was not "completed because [Ningbo] continued to change its ideas on what it wanted and it failed to perform or to contract for performance of the required work." *Id*. at 5–9.

---

[3] The motion does not challenge the ability of the Easts to testify as fact witnesses or offer lay opinion testimony. This order, therefore, does not address those issues.

Ningbo contends that while George may be qualified to offer opinions on electrical engineering, he is unqualified "to offer expert testimony regarding the printing market and how Ningbo failed in running its company operations." Doc. #62 at 4–5. Ningbo further argues the opinions are irrelevant, unhelpful, and unreliable. *Id*.

### 1. Qualifications

George[4] earned a Bachelor of Science Degree in Electrical Engineering from Mississippi State University in 1989. Doc. #61-1 at PageID #597. After working as an engineer for approximately eight years, George formed ESI in 1997. *Id*. at PageID #595–96. As President of ESI, a position he has held since the company's formation, George has designed and installed systems and machinery in various industries, including printing and converting, and has been responsible for "all phases of a project from start to completion." *Id*. at 596. George's responsibilities include "analyz[ing] customers' needs to prepare bids/quotes for the jobs." *Id*.

Contrary to Ningbo's assertions, George's expertise extends far beyond electrical engineering. George has more than twenty years of experience in designing, installing, purchasing, and setting up printing systems for customers. In this sense, while George may not be qualified to opine on the general printing market, he is undoubtedly qualified to opine on the areas touched on in his opinions—the benefits and detriments of decisions made during a printer installation process.

### 2. Substance of the opinions

Beyond the general challenge to George's qualifications, Ningbo's objections to George's opinions are conclusory (often a single statement unaccompanied by argument) and scattered (many arguments are buried in footnotes). However, it appears Ningbo argues (1) George's

---

[4] While George is inarguably interested in the outcome of this litigation, this potential bias is insufficient, standing alone, to warrant disqualification. *Hathaway v. Bazany*, 507 F.3d 312, 317 n.1 (5th Cir. 2007).

statements about what Ningbo knew, wanted, or was aware of, are improper; (2) George's statements that Ningbo contracted for other services in China is irrelevant; (3) George's statements that Ningbo gave ESI "assurances" are irrelevant; (4) the opinions are largely recitations of purported facts and, therefore, are not the province of expert opinion; and (5) George's seventh opinion, the ultimate opinion on why the project failed, is an improper mix of "factual allegations mixed with legal conclusions." *See* Doc. #62 at 4–5.

First, lacking an "ability to read minds," an expert may not testify "as to the knowledge, motivations, intent, state of mind, or purposes of [a company or] its employees." *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009). To the extent George purports to offer expert opinions on Ningbo's state of mind, such testimony is inadmissible as an expert opinion.

As to the factual recitations, it is important to distinguish between facts relied on by an expert in forming an opinion, and the opinions themselves. "[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Reach Music Publ'g, Inc. v. Warner Chappell Music, Inc.*, 988 F. Supp. 2d 395, 404 (S.D.N.Y. 2013). However, an expert report may "provide the foundation for [an] opinion," including factual assertions. *Id*. At trial, however, "the factual assertions … would have to be supported by admissible evidence" and the expert "could not present these facts to the jury for the purpose of describing what actually took place." *Id*. To the extent the factual statements included in George's opinions are included for the purpose of setting forth the foundation for his opinions, they are proper. To the extent they are intended for the purpose of establishing what took place, they are not. Given that the factual recitations themselves are not evidence and are not opinions, the Court need not decide at this time whether specific factual assertions included in the opinion are relevant.

6

Finally, George's seventh opinion states:

> From reviewing the materials submitted by BW in the course of discovery in this case, I have not seen any evidence that BW has completed work in China on the iron work and on the other necessary work to make the machine run. In fact, when I asked Ming if BW had ordered the parts needed to make the machine run in China, he did not answer. Additionally, when I asked if BW had the money ready for ESI to get paid for work ESI had completed, BW, through Ming, backpedaled and told me (after ESI had performed all the work in furtherance of the 5+ 1) that BW wanted to go back to the original design. On behalf of ESI, I never agreed to return the machine to its original design and told BW that would be nearly impossible. If ESI had shipped the last unit along with the $100k+ worth of parts to China, I had no assurance that ESI would be paid for finished work. Even if ESI had shipped the machine, it would not have functioned in China without BW and Gong performing their part of the job. For example, as far as I can determine from view of the discovery materials, BW has never completed the exhaust piping drawn by ESI for use on the printer. At the end of the day, this project is not completed because BW continued to change its ideas on what it wanted and it failed to perform or to contract for performance of the required work.

Doc. #61-1 at PageID #594. While Ningbo asserts this opinion is "factual allegations mixed with legal conclusions,"[5] factual recitations, as explained above, are proper so long as they serve as foundations for an opinion, which appears to be the case here. More importantly, Ningbo has not identified which statement in George's seventh opinion may be classified as a legal opinion. Under these circumstances, exclusion of George's seventh opinion is unwarranted.

### B. Judy East

Judy, ESI's co-owner and accountant, submitted an expert report purporting "to give answers and facts concerning East's monetary damages, invoices due from Ningbo, and responses to Mr. H. Kenneth Lefoldt, Jr., CPA's Expert Opinion dated March 14, 2019." Doc. #61-2 at PageID #629. The report is broken into nine sections, all of which are challenged by Ningbo.

#### 1. Section I

Section I sets forth "invoices [which] cover work that was performed by East Systems" but which were not submitted allegedly because Ningbo refused to guarantee payment. *Id.* at PageID

---

[5] Doc. #62 at 5.

#630. Ningbo argues that the invoices "speak for themselves" and "no expert needs to interpret them." Doc. #62 at 6–7. It further argues that because the invoices were never submitted, there is no duty to pay. *Id.* ESI responds that while the invoices were never submitted, the amounts became due because Ningbo repudiated the contract. Doc. #67 at 11.

It is axiomatic that an expert's opinion must be helpful to the trier of fact. Fed. R. Evid. 701. Opinions that purport to interpret documents which are clear on their face do not satisfy the helpfulness requirement. *Hanson v. Colgate-Palmolive Co.*, 353 F. Supp. 3d 1273, 1293–94 (S.D. Ga. 2018) (collecting cases). The invoices referenced in Section I refer to the Ningbo project and include a description of the work performed. Given this, Judy's opinion that the invoices cover work performed by ESI for Ningbo would not help a jury resolve any issue. This opinion will be excluded.

### 2. Section II

Section II includes two "pro forma invoices" which set forth sums which would have been due following completion of the various phases of the project. Doc. #61-2 at PageID #634. Ningbo argues that Judy "provides no factual documentation to support these numbers, much less any support that the work for these invoices has been completed." Doc. #62 at 7.

First, contrary to Ningbo's argument, Judy cites specific invoices as support for the numbers claimed. Furthermore, to the extent the opinion purports to provide amounts that *would have been due* had the project been completed, it necessarily presupposes that the claimed work had not been completed. In this sense, the failure to show that the claimed work had been completed has no bearing on the reliability of the opinion. Nevertheless, the invoices in Section II suffer from the same defect as the invoices in Section I—that is, they are self-explanatory such that Judy's characterization of their contents would add nothing to a jury's understanding of the case. For this reason, Judy's opinion in Section II would not be helpful to the jury and will be

excluded. *Hanson*, 353 F. Supp. 3d at 1293–94.

### 3. Section III

Section III includes two figures: a "Total Due Now for Work Completed," based on six invoices from Section I; and a "Total Due Upon Project Completion," based on the two pro forma invoices listed in Section II. Doc. #61-2 at PageID ##630–35. The performance of simple arithmetic is ordinarily not helpful to a trier of fact. *Rx.com Inc. v. Hartford Fire Ins. Co.*, 426 F. Supp. 2d 546, 554 (S.D. Tex. 2006). Because Section III merely purports to total the sums set forth in Sections I and II, the Court concludes that the opinion would not be helpful to the jury.

### 4. Section IV

Section IV lists, as an example, the costs for electrical/mechanical rebuilds for Rotogravure printing presses for four of ESI's customers and states, "The amounts that have been charged to Ningbo Bonny by East Systems are customary, reasonable, and in-line with amounts paid by other customers of East Systems for this type of equipment." Doc. #61-2 at PageID #635. Ningbo argues this opinion is conclusory and inadmissible because Judy "does not back this assertion up with sufficient facts or data." Doc. #62 at 8. To the extent Judy references an exhibit to her report, Ningbo's argument is untrue. Doc. #61-2 at PageID #635. However, Ningbo is correct that Judy's opinion is conclusory—it opines about what is customary, reasonable, and in-line with other customers without explaining why the listed projects support her ultimate opinion.[6] Accordingly, this opinion will be excluded.

### 5. Section V

Section V states that ESI has performed numerous similar rebuilds and then offers five "main reasons" for the failure of the Ningbo project:

1. East Systems was prepared to ship complete Phase II and Phase IV in December,

---

[6] The exhibit referenced reflects the costs in Section IV but contains no calculations or explanations for the amounts shown.

2016, if payment was guaranteed to be ready at the time of shipment by Ningbo
Bonny/Ming/Shaobo.
2. ESI was not prepared to reverse course because Ningbo Bonny DID NOT follow
through with its COMMITMENT to purchase the laminator/coating section from
Gong in China in order to make the 5 + 1 printer/laminator.
3. ESI would not go along with another major change on this project since it had
already done several major revisions that were requested by Ningbo
Bonny/Ming/Shaobo.
4. Ningbo Bonny should have advised ESI of its intention not to purchase the
laminator/coating section from Gong when the drawings were reviewed.
5. Ningbo Bonny breached the contract with East Systems/George East by not
carrying out its commitment to hire Gong, by refusing to guarantee payment to East
Systems at the time of equipment delivery, and by back-pedaling on the project "to
put it back as is."

Doc. #61-2 at PageID #636. Ningbo argues these are legal conclusions and are opinions "well outside of the field of accounting, which is the only field in which [Judy] is arguably an expert." Doc. #62 at 8. ESI responds that these opinions were based on Judy's personal observations and there is no "authority which prohibits an expert from using their personal observations in reaching a conclusion." Doc. #67 at 13. ESI does not argue, however, how any of the opinions, which indisputably relate to the installation of major machinery, fall within Judy's area of expertise. Accordingly, Section V is properly excluded.

### 6. Section VI

Section VI states:

East Systems is a small, family owned and operated business. When customers are late in paying their invoices, it causes East Systems difficulties. The stockholders, George and Judy East, have sacrificed their salaries and have borrowed money from their savings to keep the company running. In addition, East Systems has, like many other businesses, had the misfortune of being unable to collect some accounts receivables. This situation really burdens businesses like ESI. For these reasons, East Systems required their payment from Ningbo Bonny to be guaranteed ready and available at the time the machinery was planned to ship. Also, Ningbo Bonny, when paying ESI's previous invoices, took an average of 144 days to pay, ranging from 29 days to 440 days.

#61-2 at PageID #636. Ningbo argues this opinion is irrelevant and "not expert testimony" to the

extent it refers to ESI being a family-owned business, and sacrifices by George and Judy.[7]  Doc. #62 at 8–9.  ESI responds that the section "is relevant to inform the jury as to the financial status of ESI and the effect that Ningbo Bonny's improper conduct had on the company."  Doc. #67 at 13–14.

The Court agrees that Section VI contains matters that are not expert testimony and are otherwise inadmissible.  Even assuming ESI's financial status has some connection to its claimed damages, ESI has offered no argument or authority as to how or why Judy's vague references to general "difficulties" or "misfortune" would assist the jury in evaluating the damages issue in this specific case.  Indeed, Judy makes no attempt to identify the damages suffered from Ningbo's alleged improper delays.  For these reasons, Section VI is properly excluded as irrelevant.

### 7. Section VII

Section VII states that ESI successfully completed a similar project in China and lists reasons why the other project was successful.  Specifically, Judy opines the project was successful because the client (1) "knew what they wanted from the very beginning of the project;" (2) "stuck with their design, making very few changes;" (3) "paid [ESI] in a timely manner;" and (4) "carried their own operators to China to run and to teach the Chinese operators how to run the machine."  Doc. #61-2 at Page ID ## 637–38.  Ningbo argues these opinions are outside Judy's qualifications, and amount to improper character evidence.  Doc. #62 at 9.  ESI responds that "Judy, through her role with ESI, has knowledge as to the manner in which projects of this nature typically progress, as well as how invoices are submitted and payments are made in connection with the same. This certainly addresses accounting issues, an area in which Judy clearly possesses expert knowledge."  Doc. #67 at 14.  ESI does not address Ningbo's other arguments.

First, while Judy is likely familiar with *how* an installation project ordinarily progresses, it

---

[7] Ningbo erroneously refers to the section as Section IV.  Doc. #62 at 8.

does not follow that she is qualified to opine as to *why* a specific project succeeded or failed. *See generally Levin v. Dalva Bros., Inc.*, 459 F.3d 68, 78 (1st Cir. 2006) ("That a witness qualifies as an expert with respect to certain matters or areas of knowledge, does not mean that he or she is qualified to express expert opinions as to other fields.") (cleaned up).

Even if Judy was qualified to offer such an opinion, she has offered no explanation for how she reached the specific opinion in Section VII. To be reliable, an opinion based on experience "must be grounded in an accepted body of learning or experience in the expert's field." *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 917 (S.D. Tex. 2019). Under this approach, "[t]he witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts." *Id*. Judy's opinions on the reasons for the success of the previous project, which are wholly unexplained, fall well short of this standard. Such opinions are excludable as unreliable.

### 8. Section VIII

Section VIII opines that "it is Ningbo Bonny's own fault that it does not have a fully functional machine." Doc. #61-2 at PageID #638. For the same reasons that Judy is unqualified to opine on why a previous project succeeded, she is unqualified to opine as to why this project failed.

### 9. Section IX

Finally, Section IX details three "Expert Opinion[s]:"

(1) East Systems and George East followed all reasonable avenues to complete this project for Ningbo Bonny/Ming/Shaobo, including making numerous revisions at their request. There are no damages to Ningbo Bonny that were/are caused by East Systems/George East. Ningbo Bonny/Ming/Shaobo caused their own project to derail when George East notified them their equipment would be finished around December, 2016, but Ningbo Bonny/Ming/Shaobo would not guarantee that payment would be available for ESI at the time of shipment of Ningbo Bonny's equipment. Also, Ningbo Bonny/Ming/Shaobo, it appears, did

not follow through on their commitment to hire the Chinese contractors.

(2) The $437,879 that East Systems has been paid so far is for work and for services that were requested by Ningbo Bonny/Ming/Shaobo and completed by ESI on Ningbo Bonny's project.

(3) As of today, April 17, 2019, Ningbo Bonny owes East Systems $210,323 for work that was agreed upon and completed and for storage of their equipment at ESI's facility. If the machinery is completed and shipped, an additional $36,634 will be due to ESI, plus any additional expenses incurred, including, but not limited to, freight and equipment rental.

*Id.* at PageID #638–39. For the reasons above, the Court concludes that Paragraph 1, which purports to opine as to the reasons the project failed, is inadmissible expert testimony because it is outside Judy's qualifications. Paragraphs 2 and 3, which merely summarize a small number of invoices, are inadmissible because they would not be helpful to the jury.

# IV
## Conclusion

Ningbo's motion to exclude [61] is **GRANTED in Part and DENIED in Part**. The motion is DENIED to the extent it seeks exclusion of the opinion included in Section IV. The motion is GRANTED in all other respects.

**SO ORDERED**, this 23rd day of March, 2020.

/s/Debra M. Brown
**UNITED STATES DISTRICT JUDGE**